# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

NASDAQ, INC.; NASDAQ ISE, LLC;
AND FTEN, INC.;

      Plaintiffs,

   v.

MIAMI INTERNATIONAL HOLDINGS,
INC.; MIAMI INTERNATIONAL
SECURITIES EXCHANGE, LLC; MIAX
PEARL, LLC; AND MIAMI
INTERNATIONAL TECHNOLOGIES,
LLC;

      Defendants.

Civil Action 3:17-cv-06664-BRM-DEA

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION TO DISQUALIFY FISH & RICHARDSON P.C.

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

    A.  The Instant Lawsuit.................................................................................2

    B.  FR Served As Patent Prosecution Counsel to Nasdaq For Thirteen
        Years and Prosecuted Four of Seven Patents-in-Suit ...............................2

    C.  FR's Engagement by MIAX in This Matter is Materially Adverse to
        Nasdaq.....................................................................................................3

III.  ARGUMENT .......................................................................................................5

    A.  Legal Standards on Motions to Disqualify .............................................5

    B.  The Substantial Relationship Between the Prior and Current  Matters
        Mandates the FR Attorneys' Disqualification .........................................7

        i.  The Matters Share Overlapping Factual Bases...........................7

        ii.  The Matters Involve the Same Patents and Technology.............9

    C.  Imputation Requires Disqualification of the FR Firm ...........................13

    D.  MIAX Cannot Establish Substantial Prejudice or Waiver.....................15

IV.  CONCLUSION...................................................................................................17

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Asyst Techs., Inc. v. Empak, Inc.*,
  962 F. Supp. 1241 (N.D. Cal. 1997) ................................................................ 8, 13

*Atasi Corp. v. Seagate*,
  Tech., 847 F.2d 826 (Fed. Cir. 1988) ...................................................................8

*Audio MPEG, Inc. v. Dell, Inc.*,
  219 F. Supp. 3d 563 (E.D. Va. 2016) ..............................................................8, 9

*Barry v. Medtronic, Inc.*,
  No. 1:14-cv-104, 2015 WL 12915556 (E.D. Tex. Aug. 14, 2015) ............... 15, 16

*Cardona v. General Motors Corp.*,
  942 F. Supp. 968 (D.N.J. 1996) ........................................................................12

*Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*,
  944 F. Supp. 341 (D.N.J. 1996) ..........................................................................5

*Ciba-Geigy Corp. v. Alza Corp.*,
  795 F. Supp. 711 (D.N.J. 1992) ......................................................................7, 8

*City of Atlantic City v. Trupos*,
  201 N.J. 447 (2010) ................................................................................. 5, 6, 7

*Dewey v. R.J. Reynolds Tobacco Co.*,
  109 N.J. 201 (1988) ..........................................................................................17

*Genentech, Inc. v. Sanofi-Aventis Deutschland GmBH*,
  No. 08-4909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) ...............................12

*Hooper v. Steelplank Corp.*,
  No. 80-74351, 1981 WL 48163 (E.D. Mich. Oct. 14, 1981) ...............................14

*Innovative Memory Solutions, Inc. v. Micron Tech., Inc.*,
  No. 14-1480-RGA 2015 WL 2345657 (D. Del. May 15, 2015) .................. 11, 15

*Malico, Inc. v. Cooler Master, Inc., No. C*,
  11-4537, 2013 WL 12172992 (N.D. Cal. June 4, 2013) ................................. 9, 11

*Martin v. AtlantiCare*,
No. 10-6793, 2011 WL 5080255 (D.N.J. Oct. 25, 2011)........................ 6, 13, 14

*Openwave Sys., Inc. v. 724 Solutions (US) Inc.*,
No. 09-3511, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) ...............................12

*Rohm and Haas Co. v. Am. Cyanamid Co.*,
187 F. Supp. 2d 221 (D.N.J. 2001).................................................................. 7, 16

*Stratagene v. Invitrogen Corp.*,
225 F. Supp. 2d 608 (D. Md. 2002) ...................................................................11

*Sunbeam Prods, Inc. v. Hamilton Beach Brands, Inc.*,
727 F. Supp. 2d 469 (E.D. Va. 2010) ...................................................................7

*Synopsis, Inc. v. ATopTech, Inc.*, No. 3:13-2965,
(N.D. Cal. Jan. 13, 2014), ECF No. 91 ...............................................................16

*Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*,
No. 11-4819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012) .................................12

*Tessier v. Plastic Surgery Specialists, Inc.*,
731 F. Supp. 724 (E.D. Va. 1990) ........................................................................7

## Statutes

35 U.S.C. § 101 .....................................................................................................2

## Rules

Fed. R. Civ. P. 12 ................................................................................................2

## I.    INTRODUCTION

Under well-settled principles of professional conduct, a law firm may not represent a new client adverse to a former client in a substantially related successive matter. Based on its prior work for Nasdaq, Fish & Richardson P.C. ("FR") cannot continue to appear as counsel for MIAX in this case.

For thirteen years, FR prosecuted patents on behalf of Nasdaq, including four of *the very same patents* that Nasdaq now asserts against MIAX, FR's current client, in this lawsuit. This lawsuit is therefore substantially related to FR's prior patent prosecution work, and FR cannot be adverse to Nasdaq now in this case.

It is understandable why MIAX would want to benefit from FR's intimate knowledge of Nasdaq's patent strategies and theories. That, however, is precisely why the governing rules of professional conduct required FR either to decline to represent MIAX or to seek consent and a waiver from Nasdaq beforehand. FR did neither. Instead, FR agreed behind the scenes to represent MIAX in a matter in which the very patents FR prosecuted for Nasdaq are asserted against MIAX. While FR claims that it will not participate in "that portion" of this lawsuit relating to the patents it prosecuted, the Court need only look to the single motion to dismiss filed by MIAX to determine that such a division of labor—even if FR rigorously respected the boundary, which appears to be in doubt—is not practicable in this case: because the lawsuit is substantially related to FR's prior work for Nasdaq, FR cannot participate.

The Court should disqualify FR under RPCs 1.9 and 1.10, following the dozen courts that have disqualified side-switching counsel on the basis that they

1

are not allowed to argue that a patent they previously prosecuted to issuance is now invalid in a subsequent infringement action. No prejudice to MIAX would result from FR's disqualification because FR's co-counsel Reed Smith LLP ("Reed Smith"), the other law firm that has represented MIAX since the inception of the case, is more than capable of handling the entire matter on behalf of MIAX.

## II.   FACTUAL BACKGROUND

### A.   The Instant Lawsuit

Nasdaq filed the lawsuit against MIAX on September 1, 2017, asserting seven counts of patent infringement and three counts of trade secret misappropriation. Dkt. 1. MIAX is represented by both FR and Reed Smith. After negotiating an extension to respond to the complaint, MIAX filed a motion to dismiss under Fed. R. Civ. P. 12 on December 4, 2017, which, among other things, claimed that all seven patents-in-suit were invalid pursuant to 35 U.S.C. § 101. Dkt. 28-1. Briefing on MIAX's motion to dismiss closed on February 21, 2018, when the Court granted Nasdaq's motion for leave to file a sur-reply to address arguments MIAX raised for the first time in its reply brief. Dkts. 52 & 53. A hearing on MIAX's motion is now set for April 17. Discovery has not yet commenced.

### B.   FR Served As Patent Prosecution Counsel to Nasdaq For Thirteen Years and Prosecuted Four of Seven Patents-in-Suit

Nasdaq and FR had a longstanding professional working relationship that dates back to February 1998. In 2011, in FR's own words, "Nasdaq fired FR." Declaration of Meng Xi in Support of Plaintiffs' Motion to Disqualify Fish &

2

Richardson P.C. ("Xi Decl."), submitted concurrently herewith, at Ex. A. Over the course of thirteen years representing Nasdaq, FR prosecuted and provided counsel relating to approximately 75 U.S. patent applications on behalf of Nasdaq.

Nasdaq asserts seven patents against MIAX in this matter. Dkt. 1. FR prosecuted four of the seven patents-in-suit, U.S. Patent Nos. 7,933,827, 7,921,051, 7,747,506, and 7,599,875 (collectively, the "FR-Prosecuted Patents"). The FR-Prosecuted Patents are generally directed to the same electronic trading technology, and they were filed between 1998 and 2002 and issued between 2009 and 2011. Xi Decl., Exs. B–E. At least eight FR attorneys are listed as counsel of record for these patents on the database maintained by the U.S. Patent and Trademark Office ("USPTO"), *id.*, Exs. F–I, and most of those attorneys (Denis Maloney, Frank Gerratana, Jeffrey Barclay, Sean M. Dean, David Feigenbaum, and Timothy French (collectively, "FR Attorneys")) continue to practice at the FR firm today.

### C.   FR's Engagement by MIAX in This Matter is Materially Adverse to Nasdaq

FR cannot reasonably dispute that its representation of MIAX is materially adverse to Nasdaq. Prior to filing its notice of appearance, FR did not raise the issue of its representation of MIAX in this matter with Nasdaq, and at no time has FR asked Nasdaq for consent or a waiver as is required by the RPCs. Instead, Nasdaq itself identified the conflict while reviewing the FR-Prosecuted Patents in connection with MIAX's motion to dismiss, and raised the conflict with Nasdaq's outside counsel.

By letter dated December 20, 2017, Nasdaq's counsel informed FR of its intention to seek FR's disqualification based on FR's prior representation of Nasdaq under RPCs 1.9 and 1.10. Xi Decl., Ex. J. On the same day, Nasdaq also sought assurances from FR's co-counsel, Reed Smith LLP, that it had not received any of Nasdaq's confidential information from the FR attorneys. *Id.*, Ex. K.

On January 4, 2018, Tracy Quinn at Reed Smith provided certification that Reed Smith did not receive any Nasdaq confidential information from FR. *Id.*, Ex. L. By letter dated January 5, 2018, FR claimed that its representation of MIAX in this matter presented "no conflict" because the joint representation agreement it had with Reed Smith "specifically excludes counts relating to" the FR-Prosecuted Patents. *Id.*, Ex. A. FR assured Nasdaq that it had undertaken measures to ensure that it continues to meet the ethical obligations it owes to Nasdaq by screening every FR lawyer who has represented Nasdaq and walling off its entire Boston office from participation in the case. *Id.*

However, given MIAX's litigation strategy, these prophylactic efforts are woefully deficient. To avoid discovery, MIAX filed a motion to dismiss on the grounds that the patents Nasdaq asserted against MIAX were invalid on their face, Dkt. 28-1, even though MIAX's own lawyers at FR prosecuted most of these patents at the USPTO, arguing *in favor* of their validity when they were working for Nasdaq.[1]

---

[1] After MIAX filed its reply brief in support of its motion to dismiss, MIAX doubled down on its meritless attack on the validity of Nasdaq's patents, going so far as to send Nasdaq letters threatening sanctions for having asserted the patents in this case. These bizarre accusations are inconsistent with the law and the facts of

4

On February 16, 2018, Nasdaq gave FR until the close of business on February 26, 2018 to voluntarily withdraw from the case. *Id.*, Ex. M. FR declined to do so. This motion for disqualification ensued.

## III.   ARGUMENT

### A.   Legal Standards on Motions to Disqualify

In the District of New Jersey, issues regarding professional ethics are governed by L. Civ. R. 103.1(a), which provides that the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court ("RPC") shall govern the conduct of the bar admitted to practice in the District. *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 344–45 (D.N.J. 1996). On a motion to disqualify counsel, the movant bears the burden to prove that disqualification is appropriate. *City of Atlantic City v. Trupos*, 201 N.J. 447, 462–63 (2010). Such motions call for courts to "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Id.* at 462. In weighing this balance, courts must be mindful that "there is no right to demand to be represented by an attorney [or law firm] disqualified because of an ethical requirement." *Id.* Any doubts regarding whether disqualification is appropriate must be resolved in favor of the moving party, in order to ensure the protection of client confidences and the integrity of the profession. *Carlyle Towers*, 944 F. Supp.

---

this case, and the timing is curious: MIAX waited to make these claims until after briefing on the motion to dismiss was complete and after Nasdaq had raised the disqualification issue.

at 345.

RPC 1.10(a) provides the framework for deciding Nasdaq's motion by imputing one attorney's conflicts to all the other attorneys at the firm. The RPC reads: "When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9[.]" *See Martin v. AtlantiCare*, No. 10-6793, 2011 WL 5080255, at *3 (D.N.J. Oct. 25, 2011). As RPC 1.10(a) requires, the Court must first determine whether specific lawyers at FR must be disqualified under RPC 1.9, which governs duties to former clients. *Id.* RPC 1.9(a) provides: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."

Interpreting RPC 1.9(a), the New Jersey Supreme Court in the watershed *Trupos* opinion held that disqualification is required "when two factors coalesce: the matters between the present and former clients must be 'the same or . . . substantially related,' and the interests of the present and former clients must be 'materially adverse.'" 201 N.J. at 462. Matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation. *Id.* at 467. Interests are "materially adverse" if the law firm

6

previously represented one client, and the interests of the law firm's current client are adverse to its former client's interests. *Id.* at 463.

### B. The Substantial Relationship Between the Prior and Current Matters Mandates the FR Attorneys' Disqualification

There can be no dispute that Nasdaq is a former client of FR, and as opposing parties in this case, Nasdaq and MIAX have adverse interests. *Sunbeam Prods, Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 474 (E.D. Va. 2010) ("And [plaintiff] could not, of course, argue that its interests are not adverse to [defendant's]."); *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 730 n.5 (E.D. Va. 1990) (finding the plaintiff to be indisputably a former client of the challenged firm and its interests materially adverse to the firm's current client); *Rohm and Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 228 (D.N.J. 2001) (finding adversity requirement met because the same firm is representing its current client against a former client). Therefore, the only operative factor for FR's disqualification is whether the former and current matters are the "same" or "substantially related."

### i. The Matters Share Overlapping Factual Bases

The test for "substantially related" has been stated in several ways. "Matters are considered substantially related when it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his or her subsequent representation." *Rohm and Haas*, 187 F. Supp. 2d at 228 (citing *Ciba-Geigy Corp. v. Alza Corp.*, 795 F. Supp. 711, 716 (D.N.J. 1992)). The test "focuses on the similarity of the factual bases of

7

the two representations, rather than on the similarity of the underlying causes of action." *Id.*

FR's representation of MIAX draws on the same factual bases as the FR Attorneys' previous representation of Nasdaq because the very patents now asserted against MIAX were prosecuted by the FR Attorneys on behalf of Nasdaq. From 1998 through 2011, FR acquired information from Nasdaq related to Nasdaq's prosecution strategy (including the validity strength) of the FR-Prosecuted Patents and other patents sharing the same or similar subject matter. Such information and perspective is substantially related and material to FR's current representation of MIAX, who now challenges the validity of those same patents. *Asyst Techs., Inc. v. Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal. 1997) (finding a "substantial relationship between the work [two lawyers] performed between 1984 and 1988 in prosecuting and obtaining the patents at issue and the work undertaken by their firm, Wilson Sonsini, in challenging the validity of those same patents on behalf of different clients"). That is because "[f]ew people are more likely to have confidential information with which to attack the validity of a patent than the lawyers who prosecuted it." *Id.*

As a matter of law, FR is also presumed to have obtained confidential information during its previous representation of Nasdaq that is likely to bear on the present dispute between Nasdaq and MIAX concerning the same patents. *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 572 (E.D. Va. 2016); *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829 (Fed. Cir. 1988). Indeed, prosecution counsel regularly advises clients on patent eligibility and how to overcome prior art during

the examination of patents; thus, such issues bear on the defenses—such as ineligibility, invalidity, or unenforceability—that will arise in ensuing litigation where the issued patents are asserted. *Audio MPEG*, 219 F. Supp. 3d at 572.[2]

## ii.  The Matters Involve the Same Patents and Technology

FR has attempted to argue that a "substantial relationship" does not exist here because FR's representation of MIAX technically excludes the FR-Prosecuted Patents—instead, according to FR, the Reed Smith firm represents MIAX on that "piece" of the matter. Xi Decl., Ex. A. MIAX's attempt to divide a single lawsuit into two distinct "matters" for conflicts purposes makes no sense and has no basis in law, and MIAX should not be allowed to circumvent RPC 1.9(a) in this manner. The issue is simple: the FR Attorneys prosecuted patents for Nasdaq in one "matter," and FR now represents MIAX against these same patents in another "matter." For the "substantially related" analysis, MIAX does not get to cherry-pick counts from Nasdaq's lawsuit and call those a "matter" that is separate from the lawsuit just so that its counsel can avoid an ethical conflict—the "matter" of Nasdaq's complaint against MIAX indisputably includes the assertion of the FR-Prosecuted Patents. *See Malico, Inc. v. Cooler Master, Inc.*, No. C 11-4537, 2013 WL 12172992, at *4 (N.D. Cal. June 4, 2013) (disqualification of the defense's firm is necessary because "the position [the conflicted firm] has taken on behalf of defendants in this case threatens the validity of *all* of Malico's patent [portfolio],

---

[2] Indeed, if MIAX were to assert an inequitable conduct defense in the case, FR attorneys would almost certainly assume the uncomfortable position of fact witnesses in the case in violation of the attorney witness rule, which has been incorporated in RPC 3.7.

including the two [related patents] which it secured for Malico").

A single example in practice reveals the flaw in FR's approach. Despite assuring Nasdaq that FR's representation of MIAX specifically excludes counts relating to the FR-Prosecuted Patents, FR and Reed Smith opted to file a *single* motion to dismiss *all* counts asserted in Nasdaq's complaint. Dkt. 28-1. MIAX's brief includes coordinated invalidity arguments that do not differ from patent to patent, making it impossible to verify what attorneys (or which firm) worked on what part(s) of the brief, at what point in time those part(s) were combined into a single brief, and what mechanisms were in place to keep FR from actually reviewing or participating in any arguments pertaining to the FR-Prosecuted Patents. Indeed, the joint representation arrangement between FR and Reed Smith cannot possibly be sufficient to keep the counts separated by law firm throughout the case in a way that assures Nasdaq that the confidential information FR has obtained from representing Nasdaq in securing the FR-Prosecuted Patents are not now being used to Nasdaq's detriment. In other words, FR's piecemeal representation of MIAX—or Reed Smith and FR's joint representation of MIAX— is not workable in practice, because Nasdaq cannot be assured that certain "counts" are actually quarantined from FR and that FR is not using the confidences it gained from Nasdaq over the course of its prior representation of Nasdaq for MIAX's benefit.

Simply as a practical matter, moving forward, permitting such a division of labor would continue to prejudice Nasdaq throughout the case. It would require Nasdaq's validity and infringement experts to submit to deposition questioning by

multiple lawyers (or to schedule separate depositions for separate patents); similarly, it would give MIAX two bites at the cross-examination apple at trial. This is likely the reason that Nasdaq was unable to find an instance where a court deemed a single lawsuit to be more than one "matter" for conflicts purposes.

Moreover, even if FR were allowed to slice and dice "matter" so finely that each count in Nasdaq's lawsuit constitutes a separate "matter" for purposes of disqualification, the FR-Prosecuted Patents are substantially similar to the other patents-in-suit asserted against MIAX. All seven patents-in-suit share the same subject matter (electronic trading technology) and are infringed by the same accused products and services (electronic trading platforms). As made clear in MIAX's motion to dismiss (and its letters threatening sanctions against Nasdaq), MIAX also challenges the validity of all of the patents-in-suit—not just a subset of the patents—based on the argument that the patents are directed to the same patent-ineligible subject matter. *See generally* Dkts. 1 & 38. Courts have repeatedly ordered disqualification of firms even where the specific patents asserted were different from those the firm prosecuted. *See, e.g.*, *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608 (D. Md. 2002) (disqualifying lawyer who worked on the prosecution of two patents that are related to the patent-in-suit at a prior firm as well as her current firm through imputation); *Innovative Memory Solutions, Inc. v. Micron Tech., Inc.*, No. 14-1480-RGA 2015 WL 2345657 (D. Del. May 15, 2015) (granting motion disqualifying plaintiff's counsel in a patent infringement action because counsel previously represented defendant in cases involving the same technology as the patents-in-suit); *Malico*, 2013 WL 12172992 (disqualifying

11

defendant's firm where a single attorney at the firm previously prosecuted two patents on behalf of the plaintiff that were "substantially similar" to the patents the plaintiff asserted in the current matter); *Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*, No. 11-4819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012) (disqualifying plaintiff's law firm because the firm's attorneys represented defendant in previous patent litigation challenging the validity of patents that share the same USPTO class as the asserted patents); *Openwave Sys., Inc. v. 724 Solutions (US) Inc.*, No. 09-3511, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) (disqualifying defendant's firm who worked on ten patent prosecution matters for plaintiff which resulted in the issuance of two patents relating to the same general technological area as the asserted patents); *Genentech, Inc. v. Sanofi-Aventis Deutschland GmBH*, No. 08-4909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) (disqualifying defense law firm by imputation because its founder was previously lead counsel for a patent interference proceeding on behalf of plaintiff, where the interference proceeding involved a patent directed to the same general subject matter as the patents-in-suit). Thus, disqualification of FR is additionally proper for the reason that the FR-Prosecuted Patents asserted in the current matter are not only substantially similar to the other patents-in-suit, but are literally among the patents-in-suit.

"[D]isqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors*

12

*Corp.,* 942 F. Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted). FR's current representation of MIAX is substantially related to its previous representation of Nasdaq because what FR has learned from Nasdaq while prosecuting Nasdaq's patents is directly material to MIAX's defense against these same patents in this lawsuit.

As a matter of law, such a direct conflict necessitates FR's disqualification from this case, as that is the only way to ensure the integrity and fairness of the proceedings.

### C.    Imputation Requires Disqualification of the FR Firm

RPC 1.10(a) requires the disqualification of an entire firm if any one of its lawyers is disqualified from representing a client. RPC 1.10(a); *Martin*, 2011 WL 5080255, at *3. Because six FR Attorneys who previously represented Nasdaq are current members of FR, their knowledge must be imputed to all members of the FR firm and the entire firm must be disqualified. *Asyst Techs.,* 962 F. Supp. at 1243 (disqualifying law firm and all attorneys affiliated with the firm from serving as counsel in patent infringement defense case where two partners at the firm prosecuted the asserted patents fourteen years earlier). "[S]urely the rules of ethics are not intended to encourage litigants to choose firms that may possess confidential information belonging to their adversaries." *Id.*

FR has argued that the screening and walling off of the FR Attorneys should be more than enough to allow the FR firm escape the same fate. Xi Decl., Ex. A. Even so, to date FR has failed to produce a written screening policy or otherwise

13

provide proof that it had adopted any such express procedures *before* its representation of MIAX even began, as is required by RPC 1.10. *Martin*, 2011 WL 5080255, at *10. Nor has FR sought Nasdaq's written consent that FR's policies and precautions address Nasdaq's concerns regarding FR's conflict. Instead, by putting in place a joint representation agreement with Reed Smith behind Nasdaq's back, FR has attempted to sidestep RPC 1.9(a)'s written consent requirement as well as RPC 1.10(a)'s imputation rule. As FR has already violated RPCs 1.9 and 1.10, it should be disqualified from the case.

Courts have found that even if the current disqualified attorneys "may never have represented" the former client, "it is clear that if [a particular lawyer] is disqualified from representing [the current client], then so is his entire law firm." *See, e.g.*, *Hooper v. Steelplank Corp.*, No. 80-74351, 1981 WL 48163, at *2 (E.D. Mich. Oct. 14, 1981) (disqualifying entire law firm from representing alleged patent infringer because another lawyer at the firm obtained "precisely the same patent" being asserted and because alleged infringer now challenges the validity of the asserted patent). Indeed, it may well be that neither the FR Attorneys nor the FR firm "[e]ver received any confidential information from [the former client] which [the current client] could use to strike down the patent. Be that as it may, . . . it is not within the bounds of propriety to permit a law firm to assist one client in obtaining a patent and then to assist another client in proving that the patent was not validly issued." *Id.* at *3.

In light of the FR Attorneys' lengthy and involved prosecution of patents on behalf of Nasdaq and the factual overlap between FR's past and present

representations, disqualification of the by imputation FR firm is necessary. *Innovative Memory Sols., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2015 WL 2345657, at \*5 (D. Del. May 15, 2015).

### D.   MIAX Cannot Establish Substantial Prejudice or Waiver

To dissuade Nasdaq from proceeding with the disqualification motion, on January 5, 2018, MIAX complained that FR's disqualification would cause great prejudice to MIAX because it "has been relying on FR's guidance on the non-Nasdaq Patent issues through the preparation and filing of the currently pending case-dispositive motion to dismiss," and because "FR's prior experience in litigating the [non-Nasdaq Patents] brings efficiencies that no replacement firm could offer." Xi Decl., Ex. A. MIAX is unable to meet the heavy burden of establishing that justice would require continued representation by FR, nor has MIAX provided any reason why FR's able co-counsel, Reed Smith, who already represents MIAX on some of the patents-in-suit, cannot competently or adequately represent MIAX. Indeed, the very fact that MIAX is represented by two sets of counsel since the commencement of the matter eliminates any claim of prejudice by MIAX. *Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2015 WL 12915556, at \*9-10 (E.D. Tex. Aug. 14, 2015) (disqualifying firm that prosecuted the asserted patents as trial counsel in patent infringement case, finding that while there is "inconvenience and duplication of effort" for co-counsel to now take the lead, there is no substantial hardship because co-counsel had been retained since inception of case).

MIAX also suggests that because Nasdaq consented to FR's application for admission *pro hac vice* to this Court, Nasdaq somehow "exacerbated" any alleged prejudice to MIAX. Xi Decl., Ex. A. A consent to admission *pro hac vice* has nothing to do with any potential conflict, but in any event, FR's allegation has no basis in fact. Nasdaq did not discover the potential conflict until after it had already provided consent. Most importantly, under RPC 1.9 it was *FR's obligation* to disclose that conflict beforehand; Nasdaq can hardly be blamed for FR's own duplicity. MIAX should not be allowed to claim prejudice when its counsel's own feckless disregard of the ethical rules created the prejudice it now complains of.

To the extent MIAX's "exacerbation" argument is a waiver argument in disguise, it is dead on arrival. This motion comes before MIAX has answered the complaint, before discovery has commenced, and within months after the issue was first raised. Appreciating the gravity of the motion to disqualify, Nasdaq approached FR only after carefully weighing the issues. Similarly, Nasdaq certainly was acting reasonably and expeditiously in filing the present motion less than 60 days after FR's January 5, 2018 letter. *See Barry*, 2015 WL12915556, at *10 (finding no waiver despite one-year delay); *Synopsis, Inc. v. ATopTech, Inc.*, No. 3:13-2965 (N.D. Cal. Jan. 13, 2014), ECF No. 91 (granting motion to disqualify despite defendant's argument that plaintiff waited six months to raise the issue of a potential conflict and despite defendant's successful motion to dismiss some of plaintiff's claims); *cf. Rohm and Haas*, 187 F. Supp. 2d at 231 (finding waiver after a two-and-a-half year delay in filing motion, where defendant did not have a reason for the delay, and because plaintiff would suffer significant prejudice

16

if its counsel were disqualified) (citing cases where delays of one-year or more justified finding of waiver).

Any claim of prejudice by MIAX is a red herring. This fledgling case has remained at the motion to dismiss/pleadings phase for the last six months; MIAX has yet to even answer the complaint and discovery has yet to commence. Briefing on MIAX's motion to dismiss has only recently concluded on February 21, 2018, and a hearing on MIAX's motion to dismiss is not until April 17, 2018—after the return date for the instant motion. Thus, between the filing of Nasdaq's complaint and now—and indeed, between Nasdaq's discovery of FR's conflict and now—nothing but motion practice that co-counsel Reed Smith has been directly involved with has occurred. At this stage of the litigation, MIAX can make no compelling showing of prejudice to have the Court second-guess FR's disqualification on that basis. *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 219–21 (1988) (emphasizing that only in the most "extraordinary" and "unusual case"—*i.e.*, when counsel is sought to be disqualified "on the eve of trial" after having spent more than 1,800 hours preparing the case for trial and participating in more than 36 depositions—may a conflicted firm be allowed to continue a representation based on a claim of prejudice).

The Court should therefore rule that the balance tips in favor of disqualifying the FR firm from this case.

## IV.   CONCLUSION

For the foregoing reasons, Nasdaq respectfully requests that this Court disqualify Fish & Richardson P.C. from representing MIAX in this case.

Dated:  March 2, 2018   Respectfully submitted,

By: *s/ Michael Critchley, S*r.      
   Michael Critchley, Sr.
   Critchley, Kinum & Denoia, LLC
   75 Livingston Ave, Suite 303
   Roseland, New Jersey 07068
   Telephone: (973) 422-9200
   mcritchley@critchleylaw.com

   Arun S. Subramanian (*pro hac vice*)
   Jacob W. Buchdahl (*pro hac vice*)
   Susman Godfrey L.L.P.
   1301 Avenue of the Americas, 32nd Floor
   New York, New York 10019
   Telephone: (212) 336-8330
   asubramanian@susmangodfrey.com
   jbuchdahl@susmangodfrey.com

   Floyd G. Short (*pro hac vice*)
   Susman Godfrey L.L.P.
   1201 Third Avenue, Suite 3800
   Seattle, Washington 98101
   Telephone: (206) 516-3880
   fshort@susmangodfrey.com

   Meng Xi (*pro hac vice*)
   Susman Godfrey L.L.P.
   1900 Avenue of the Stars, Suite 1400
   Los Angeles, California 90067
   Telephone: (310) 789-3100
   mxi@susmangodfrey.com

   ***Attorneys for Plaintiffs Nasdaq, Inc., Nasdaq
ISE, LLC, and FTEN, Inc.***