# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NASDAQ, INC. et al, | |
| Plaintiffs, | Civil Action No. 17-6664 (BRM)(DEA) |
| v. | **MEMORANDUM & ORDER** |
| MIAMI INTERNATIONAL HOLDINGS, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on a motion by Plaintiffs for an Order disqualifying Defendants' counsel, Fish & Richardson P.C. The Court decides the matter without oral argument pursuant to Local Civil Rule 78.1. The Court has carefully considered the parties' submissions, and for the reasons below, the motion is granted.

I. Background

Plaintiffs Nasdaq, Inc. ("Nasdaq"), Nasdaq ISE, LLC ("ISE") and FTEN, Inc. ("FTEN")[1] bring this action alleging patent infringement and misappropriation of trade secrets against four entities collectively referred to by the parties as MIAX.[2] The Complaint contains ten counts. Counts I and II of the Complaint allege that MIAX has infringed two separate patents owned by ISE. Counts III, IV, V and VI allege that MIAX has infringed four separate patents owned by Nasdaq. Count VII alleges that MIAX infringed a patent owned by FTEN. The final three counts, Counts VIII through X, allege that MIAX misappropriated certain of Nasdaq's trade secrets.

---

[1] Plaintiffs ISE and FTEN are wholly-owned subsidiaries of Plaintiff Nasdaq.
[2] These four entities are Miami International Holdings, Inc., Miami International Securities Exchange, LLC, MIAX PEARL, LLC, and Miami International Technologies, LLC.

The seven patents-in-suit relate generally to electronic trading technology. More specifically, ISE's patents are directed to how an automated exchange allocates trades between traders. FTEN's patent relates to automatically cancelling orders by monitoring market data from a plurality of exchanges. Nasdaq's patents are directed to displaying quotes in a particular way, monitoring whether a trader's trading terminal is online, and assigning orders to designated securities processors. ECF No. 69-6 at ¶ 22. All of the patents-in-suit are alleged to be infringed by the same accused products and services relating to electronic trading platforms.

MIAX is represented in this action by Fish & Richardson P.C ("Fish") and Reed Smith LLP ("Reed Smith"). Plaintiff Nasdaq is a former client of Fish. Fish represented Nasdaq with respect to intellectual property matters from 1998 until 2011, during which time Fish prosecuted many patents on behalf of Nasdaq, including the four patents that Nasdaq is asserting in the present case (the "Nasdaq Patents"). The Nasdaq Patents were filed between 1998 and 2002, and the patents issued between 2009 and 2011. ECF No. 54-1 at 3.

In 2011, Fish's representation of Nasdaq was terminated. ECF No. 69-1 at ¶ 6. Fish transferred Nasdaq's patent portfolio to another law firm, Nixon & Vanderhye, P.C. *Id.* Fish did not retain any copies of the physical files from Nasdaq after the representation was terminated. *Id.* at ¶ 8. Most of the Fish attorneys that worked on prosecuting the Nasdaq Patents still practice with Fish today, and all reside in the firm's Boston office. *Id.* ¶ 5.

When approached about representing MIAX in the instant case, Fish apparently recognized that there was a conflict -- it could not be adverse to its former client, Nasdaq, in any matter substantially related to Fish's prior representation. As such, Fish and MIAX entered into a "limited-scope engagement agreement" with respect to the present action. *Id.* ¶ 9. Under this agreement, MIAX would be required to retain an additional law firm as "conflicts counsel" to

handle all matters where Fish would have a conflict with Nasdaq. *Id.* MIAX retained Reed Smith as conflicts counsel. Consequently, according to Fish, Fish is lead counsel for aspects of the case pertaining to ISE, FTEN and the trade secret claims, but Fish will have no input into the defense of the four Nasdaq Patents. ECF No. 69 at 7. Reed Smith, on the other hand, is lead counsel for issues relating to the Nasdaq Patents. *Id.*

When challenged by Nasdaq regarding its appearance in this matter, Fish asserted that its appearance on behalf of MIAX presents no conflict because its representation excludes the Counts in the Complaint involving the Nasdaq Patents. ECF No. 54-1 at 4. Fish advised Plaintiffs that in order to meet its ethical obligations to Nasdaq, Fish screened every lawyer who previously represented Nasdaq and has "walled off" its entire Boston office from participation in this case (the Fish attorneys working on this case are located in the firm's New York, Texas, California and Washington D.C. offices). *Id.* Plaintiffs, however, have moved to disqualify Fish, arguing that Fish's efforts to avoid a conflict are "woefully deficient." *Id.* Plaintiffs argue that Fish's continued participation in this matter will prejudice Nasdaq because (1) Fish prosecuted four of the seven patents that are asserted of this action; (2) the remaining three patents involve the same field of technology for which Fish provided IP counseling to and prosecuted patents for Nasdaq; and (3) the trade secret claims similarly involve the same technological field and may implicate confidential information that Nasdaq provided to Fish during its previous relationship.

In response, Fish contends there is no conflict that compels its disqualification. Fish argues that it does not represent MIAX with respect to Nasdaq's patent claims in this action and, therefore, no conflict exists as to those claims. Fish further claims that no conflict can exist as to the claims by ISE and FTEN because neither entity was a former client. With respect to the

3

trade secret claims asserted by Nasdaq, Fish alleges that these claims are wholly distinct from the past work Fish did on the Nasdaq Patents, and Plaintiffs have not demonstrated that any of the trade secret information at issue was every imparted to Fish. Finally, Fish contends that even if a conflict was found to exist, a balancing of the relevant factors leads to the conclusion that Fish may represent MIAX here.

II. Analysis

A. Legal Standard

The Court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). In this District, questions of attorney ethics are governed by Local Civil Rule 103.1(a), which provides that the conduct of attorneys admitted before this Court shall be governed by the Rules of Professional Conduct ("RPCs") of the American Bar Association as modified by the New Jersey Supreme Court. *FMC Corp. v. Guthery*, 2009 WL 485280 (D.N.J. February 24, 2009); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav.*, 944 F.Supp. 341, 345 (D.N.J.1996). Typically, when interpreting the Rules of Professional Conduct, our courts "look[ ] to New Jersey's state courts' interpretations of them as primary authority and modifies that interpretation when required or permitted by federal law." *Guthery*, 2009 WL 485280 at *3.

This dispute arises under RPCs 1.10(a) and 1.9(a). Pursuant to RPC 1.10(a), "[w]hen lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by … RPC 1.9." Under RPC 1.9(a), "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse

4

to the interests of the former client unless the former client gives informed consent confirmed in writing." New Jersey's Supreme Court has noted that the "prohibition [of RPC 1.9(a)] is triggered when two factors coalesce: the matters between the present and former clients must be 'the same or ... substantially related,' and the interests of the present and former clients must be 'materially adverse.'" *City of Atl. City v. Trupos*, 201 N.J. 447, 462 (2010). Matters are "substantially related" if two elements are met: "(1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." *Id.* at 467. Importantly, the analysis as to whether matters are substantially related "must start from the now well-established principle that whether the matters are the 'same or substantially related' must be based in fact because New Jersey has "reject[ed] the appearance of impropriety as a factor to be considered in determining whether a prohibited conflict of interest exists under RPC ... 1.9." *Trupos*, 201 N.J. at 464.

The Court of Appeals for the Third Circuit has noted that "[a]lthough disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). The question of whether disqualification is appropriate is committed to the sound discretion of the district court, which "means that the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Id.* Indeed, "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Carlyle Towers*, 944 F.Supp. at 345 (quoting *Alexander v.*

5

*Primerica Holdings, Inc.*, 822 F. Supp. 1099 1114 (D.N.J.1993)). On a motion to disqualify counsel, the movant bears the burden to prove that disqualification is appropriate. *City of Atlantic City v. Trupos*, 201 N.J. 447, 462-63 (2010).

"Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Carlyle Towers*, 944 F.Supp. at 345. "Because disqualification during pending litigation is an extreme measure, courts must closely scrutinize the facts of each case to avoid injustice." *In re Cendant Corp. Securities Litigation*, 124 F. Supp 2d 235, 249 (D.N.J. 2000). In ruling on such a motion, courts should "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Miller*, 624 F.2d at 1201. Notably, "ethical rules should not be blindly applied without consideration of the relative hardships." *Carlyle Towers*, 944 F.Supp. at 345. "The court must balance the hardships to the client whose lawyer is sought to be disqualified against potential harm to the adversary should the attorney be permitted to proceed." *Cendant Corp.*, 124 F.Supp.2d at 249; *see also Trupos*, 201 N.J. at 462 ("The procedure relevant to an application to disqualify counsel under RPC 1.9(a) is clear: a motion for disqualification calls for us to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel.") (quotations omitted). In weighing this balance the Court is mindful that any "doubts are to be resolved in favor of disqualification." *Carlyle Towers*, 944 F.Supp. at 345.

B. Plaintiffs' Motion

The relevant facts here are generally not contested. Nasdaq is a former client of Fish. Fish represented Nasdaq from 1998 to 2011, providing services that included "intellectual

property guidance and patent prosecution which yielded more than twenty-five (25) issued U.S. patents." ECF No. 73-1 at ¶ 3. In the course of its representation, Fish prosecuted four of the seven patents that are asserted in this action.

Fish is representing MIAX in this case. As opposing parties, and given the fact that the other Plaintiffs, IFE and FTEN, are wholly-owned subsidiaries of Nasdaq, there can be no dispute that Nasdaq and MIAX have adverse interests with respect to this litigation. In light of Fish's prior relationship with Nasdaq, Fish and Reed Smith entered into a joint representation agreement and divided issues in this lawsuit between themselves in an attempt to avoid a conflict. The central question before the Court is whether this representation arrangement sufficiently negates the conflict in this case. Under the specific facts in this case, the Court finds that it does not.

As an initial matter, despite MIAX's attempts to break down the individual claims in this case into discrete "matters" for conflicts purposes, this is a single lawsuit. Plaintiffs are related entities, their claims are contained in a single Complaint, and this matter is proceeding as a single action. The seven asserted patents and the alleged trade secrets involve the same general field of technology, and the accused instrumentalities are the same for all the patent infringement claims. Indeed, notwithstanding its dual representation and its contention that is case is comprised of discrete parts, MIAX elected to file a single motion to dismiss in response to the Complaint. Given the related nature of all the issues in the case, the Court finds that this litigation should be considered as a whole for the purposes of the ethical issues raised here, and not as distinct, unrelated parts.

Although it terminated approximately six years ago, an attorney-client relationship existed between Fish and Nasdaq for over a decade. Nasdaq asserts that as a result of this

7

relationship, "Fish is intimately familiar with Nasdaq's strategic approaches to managing its technology and inventions." ECF No. 73-1 at ¶ 8. Indeed, according to Nasdaq, "[t]oday, what Nasdaq has in the way of patents related to the electronic trading technology field, and what Nasdaq protected as trade secrets apart from its patented inventions, was shaped by Fish's IP counseling and strategy over the course of a decade." *Id.* Fish prosecuted the Nasdaq Patents asserted in this case, and, as such, there is no doubt that during the course of the relationship Fish obtained confidential information that is likely to bear upon the present dispute between Nasdaq and MIAX. *See Essex Chem. Corp. v. Hartford Acc. & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998) (where the matters are substantially related, "the court will presume that the attorney has acquired confidential information from the former client."); *see also Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 569 (E.D. Va. 2016) ("It is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter."). As Plaintiffs point out, this confidential information would necessarily include information from Nasdaq related to Nasdaq's strategic approach to its intellectual property and patent prosecution, and include information bearing on validity. Thus, Fish not only would have obtained knowledge relating generally to Nasdaq's patent prosecution strategies, but also specifically as to the intended meaning and scope of each of the patented claims, their potential to be infringed, and facts regarding validity and enforceability.

Contrary to Fish's assertions, the Court finds this confidential information bears not only on issues in this case related to the Nasdaq Patents, but also on the other patent and trade secrets issues in this case, as they share similar subject matter. All of the patents at issue in this case relate to "methods and systems for automated securities trading, including options trading," and

the accused technology is the same for all asserted patents.  ECF No. 1 at ¶ 20.  As such, applying *Trupos*, the Court finds this lawsuit, as a whole, to be "substantially related" to Fish's earlier representation of Nasdaq. 201 N.J. at 467 ("[F]or purposes of RPC 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.").

The Court further finds that the interests of Nasdaq and MIAX, as opposing parties in this lawsuit, are "materially adverse." *Trupos*, 201 N.J. at 462.  As such, Fish's representation of MIAX creates a conflict under RPCs 1.9 and 1.10, which Nasdaq has not waived.  Balancing the relevant factors to determine if disqualification is the most appropriate manner by which to enforce these disciplinary rules, the Court finds disqualification is appropriate.

Placing MIAX's right to choose its counsel on one side of the scale and the need to maintain the integrity of the profession on the other, the scale weighs in favor of disqualification. As the Third Circuit has noted, RPC 1.9 has several purposes: (1) "[i]t is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him"; (2) the rule is "important for the maintenance of public confidence in the integrity of the bar"; and (3) "a client has a right to expect the loyalty of his attorney in the matter for which he is retained." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).  These purposes are furthered by prohibiting Fish from representing its former client's adversary in this litigation.  Indeed, finding otherwise would allow the same law firm that argued for the patentability of Nasdaq's inventions to represent parties adverse to Nasdaq in this suit who are arguing those very same patents are invalid.  As the Court views the facts here, it makes little

difference, in light of the purposes of RPC 1.9, whether Fish or its co-counsel technically advances those arguments. The defense of this matter is necessarily a collaborative effort and, given the very substantial relationship between this matter and Fish's prior representation of Nasdaq, disqualification is the only remedy that will "prevent *even the potential* that [Nasdaq's] confidences and secrets may be used against [it]." *Corn Derivatives*, 748 F.2d at 162 (emphasis added).

Finally, the Court is unpersuaded by arguments that disqualification will unduly prejudice MIAX. MIAX has been represented by two sets of attorneys from the outset of this litigation. Reed Smith's representation of MIAX can continue uninterrupted.

III. Conclusion and Order

The Court has carefully considered the submissions of the parties. For the reasons above, IT IS on this 6th day of September 2018

ORDERED that Plaintiff's motion to disqualify [ECF No. 54] is GRANTED; and it is further

ORDERED that Fish & Richardson P.C is hereby disqualified from further participation in this litigation.

        s/ Douglas E. Arpert
        Hon. Douglas E. Arpert
        United States Magistrate Judge