**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| NASDAQ, INC, *et al.*, | : : : : : : : : : : : | Civil Action No. 17-6664-BRM-DEA  **OPINION** |
| Plaintiffs, |  |  |
| v. |  |  |
| MIAMI INTERNATIONAL HOLDINGS, INC., *et al.*, |  |  |
| Defendants. |  |  |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an appeal by Fish & Richardson, PC ("Fish") (ECF No. 107) of Magistrate Judge Douglas E. Arpert's September 6, 2018 Memorandum and Order (ECF No. 105) granting Nasdaq, Inc. ("Nasdaq"), Nasdaq ISE, LLC ("ISE"), and Ften, Inc.'s ("FTEN") (collectively, "Plaintiffs") Motion to Disqualify Fish as Miami International Holdings, Inc, Miami International Securities Exchange, LLC, MIAX Peral, LLC, and Miami International Technologies, LLC's (collectively, "MIAX") counsel. (ECF No. 54.) Plaintiffs opposed the appeal. (ECF No. 109.) Having reviewed the parties' submissions filed in connection with the appeal and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Fish's Appeal (ECF No. 107) is **DENIED** and Judge Arpert's September 6, 2018 Memorandum and Order (ECF No. 105) is **AFFIRMED**.

## I. BACKGROUND

Fish does not dispute Judge Arpert's recitation of facts to Nasdaq's Motion to Disqualify. *See* (ECF No. 107-1 at 9 ("[T]he core facts on Plaintiff's Motion to Disqualify Fish were not in dispute. Rather, the dispute was the legal conclusions to be drawn based on those facts, i.e., whether disqualification under RPCs 1.9 and 1.10 was appropriate.").) Indeed, Judge Arpert noted "[t]he relevant facts [were] generally not contested." (ECF No. 105 at 6.) As such, the Court incorporates Judge Arpert's comprehensive recitation of the background, in relevant part:

> Plaintiffs [Nasdaq], [ISE] and [FTEN] bring this action alleging patent infringement and misappropriation of trade secrets against four entities collectively referred to by the parties as MIAX. The Complaint contains ten counts. Counts I and II of the Complaint allege that MIAX has infringed two separate patents owned by ISE. Counts III, IV, V and VI allege that MIAX has infringed four separate patents owned by Nasdaq. Count VII alleges that MIAX infringed a patent owned by FTEN. The final three counts, Counts VIII through X, allege that MIAX misappropriated certain of Nasdaq's trade secrets.
> The seven patents-in-suit relate generally to electronic trading technology. More specifically, ISE's patents are directed to how an automated exchange allocates trades between traders. FTEN's patent relates to automatically cancelling orders by monitoring market data from a plurality of exchanges. Nasdaq's patents are directed to displaying quotes in a particular way, monitoring whether a trader's trading terminal is online, and assigning orders to designated securities processors. ECF No. 69-6 at ¶ 22. All of the patents-in-suit are alleged to be infringed by the same accused products and services relating to electronic trading platforms.
> MIAX is represented in this action by [Fish] and Reed Smith LLP ("Reed Smith"). Plaintiff Nasdaq is a former client of Fish. Fish represented Nasdaq with respect to intellectual property matters from 1998 until 2011, during which time Fish prosecuted many patents on behalf of Nasdaq, including the four patents that Nasdaq is asserting in the present case (the "Nasdaq Patents"). The Nasdaq Patents were filed between 1998 and 2002, and the patents issued between 2009 and 2011. ECF No. 54-1 at 3.
> In 2011, Fish's representation of Nasdaq was terminated. ECF No. 69-1 at ¶ 6. Fish transferred Nasdaq's patent portfolio to another law firm, Nixon & Vanderhye, P.C. *Id.* Fish did not retain

> any copies of the physical files from Nasdaq after the representation was terminated. *Id.* at ¶ 8. Most of the Fish attorneys that worked on prosecuting the Nasdaq Patents still practice with Fish today, and all reside in the firm's Boston office. *Id.* ¶ 5.
>
> When approached about representing MIAX in the instant case, Fish apparently recognized that there was a conflict -- it could not be adverse to its former client, Nasdaq, in any matter substantially related to Fish's prior representation. As such, Fish and MIAX entered into a "limited-scope engagement agreement" with respect to the present action. *Id.* ¶ 9. Under this agreement, MIAX would be required to retain an additional law firm as "conflicts counsel" to handle all matters where Fish would have a conflict with Nasdaq. *Id.* MIAX retained Reed Smith as conflicts counsel. Consequently, according to Fish, Fish is lead counsel for aspects of the case pertaining to ISE, FTEN and the trade secret claims, but Fish will have no input into the defense of the four Nasdaq Patents. ECF No. 69 at 7. Reed Smith, on the other hand, is lead counsel for issues relating to the Nasdaq Patents. *Id.*
>
> When challenged by Nasdaq regarding its appearance in this matter, Fish asserted that its appearance on behalf of MIAX presents no conflict because its representation excludes the Counts in the Complaint involving the Nasdaq Patents. ECF No. 54-1 at 4. Fish advised Plaintiffs that in order to meet its ethical obligations to Nasdaq, Fish screened every lawyer who previously represented Nasdaq and has "walled off" its entire Boston office from participation in this case (the Fish attorneys working on this case are located in the firm's New York, Texas, California and Washington D.C. offices). *Id.*

(ECF No. 105 at 1-3.)

Nevertheless, on March 2, 2018, Plaintiffs moved to disqualify Fish, arguing Fish's efforts to avoid a conflict were "woefully deficient." (ECF No. 54 at 4.) In their Motion to Disqualify, they argued Fish's participation in this matter will prejudice Nasdaq because "(1) Fish prosecuted four of the seven patents that are asserted of this action; (2) the remaining three patents involve the same field of technology for which Fish provided IP counseling to and prosecuted patents for Nasdaq; and (3) the trade secret claims similarly involve the same technological field and may implicate confidential information that Nasdaq provided to Fish during its previous relationship." (ECF No. 105 at 3.) On September 6, 2018, Judge Arpert granted Plaintiffs' Motion to Disqualify

3

Fish, finding in part, "[a]s opposing parties, and given the fact that the other Plaintiffs, IFE and FTEn, are wholly-owned subsidiaries of Nasdaq, there can be no dispute that Nasdaq and MIAX have adverse interest with respect to this litigation." (ECF No. 105 at 7.) Now, Fish appeals Judge Arpert's decision. (ECF No. 107.)

## II. LEGAL STANDARD

With respect to a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. Similarly, this Court's Local Rules provide that "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days" and the District Court "shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L.Civ.R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's order if the order is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); L.Civ.R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge). The burden of showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the appeal." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65

4

(D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's ruling is "contrary to law" if it misinterpreted or misapplied applicable law. *Kounelis*, 529 F. Supp. 2d at 518; *Gunter*, 32 F. Supp. 2d at 164.

## III. Decision

### A. Limiting the Scope of Representation

Fish argues the threshold legal issue to be determined prior to deciding whether Fish is averse to a "former client" in a "substantially related" matter under RPC 1.9(a) is whether Fish was permitted to limit the scope of its representation of IMAX. (ECF No. 107-1 at 9-10.) Plaintiffs argue Fish's limited scope representation does not work to immunize the conflict of interest at hand. (ECF No. 109 at 7-8.)

Rule of Professional Conduct 1.2(c) states, "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." *The Restatement (Third) of the Law of Lawyering*, Section 121, comment c(iii), notes "[s]ome conflicts can be eliminated by an agreement limiting the scope of the lawyer's representation if the limitation can be given effect without rendering the remaining representations objectively inadequate." Illustration 4 of the *Restatement* is instructive:

> Lawyer has been retained by Client to represent Client in general business matters. Client has a distribution contract with Manufacturer, and there is a chance that disputes could arise under the contract. Lawyer represents Manufacturer in local real estate matters completely unrelated to Client's business. An agreement between Lawyer and Client that the scope of Lawyer's

5

> representation of Client will not extend to dealing with disputes with Manufacturer would eliminate the conflict posed by the chance otherwise of representing Client in matters adverse to Manufacturer (see § 128). Such an agreement would not require the consent of Manufacturer.

*Id.* § 121 ill. 4. To eliminate the conflict, the Lawyer was required to craft a representation agreement that avoided *all* disputes involving the Client and Manufacturer to avoid the chance of the Lawyer having to represent the Client in matters adverse to the Manufacturer. *Id.*

Although a lawyer may limit the scope of its representation, Judge Arpert was correct in finding that the limitation here was unreasonable under the circumstances of this matter. (ECF No. 105 at 7.) It is undisputed that Fish is representing MIAX in this case and that Nasdaq is an opposing party to the matter. An attorney-client relationship existed between Fish and Nasdaq for over a decade, which means Fish has familiarity with Nasdaq's strategic approaches to managing its technology and inventions. In fact, Fish prosecuted Nasdaq Patents asserted in this case, and, as such, there is no doubt that during the course of that relationship Fish obtained confidential information that is likely to bear upon the current dispute between Nasdaq and MIAX whether as to the patents or misappropriate on trade secrets claims. *See Essex Chem. Corp. v. Hartford Acc. & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998) (finding that, where the matters are substantially related, "the court will presume that the attorney has acquired confidential information from the former client"); *see also Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 569 (E.D. Va. 2016) ("It is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter.").

As opposing parties and given that IFE and FTEN are wholly-owned subsidiaries of Nasdaq, Nasdaq and MIAX clearly have adverse interests in this litigation. Despite MIAX's

attempt to parcel individual claims in this case for conflict purposes, this is one lawsuit, all claims are contained in a single Complaint, and IMAX elected to file a single motion to dismiss in response to the Complaint. The single brief on the motion to dismiss filed by Fish and Reed Smith attacked all the patents in the case on practically identical grounds, including those that Fish had previously prosecuted and won for Nasdaq. In addition, the brief contained a joint introduction, fact section, and joint exhibits. This demonstrates a collaborative effort in representing MIAX against Nasdaq, irrespective of their limited scope representation agreement. As such, Judge Arpert's conclusion that Fish and MIAX's limited-scope agreement was not appropriate under the circumstances is not "clearly erroneous or contrary to law." L.Civ.R. 72.1(c)(1)(A). Unlike the Illustration 4 in the *Restatement*, Fish is representing IMAX in a matter adverse to Nasdaq and the limited scope agreement did not avoid all disputes between Nasdaq and IMAX. Accordingly, Fish's Appeal is **DENIED** for this reason alone. Nevertheless, the Court will briefly address Fish's RPC 1.9 and 1.10 arguments.

### B. *RPC* **1.9**

Fish argues Plaintiffs did not carry their burden to justify disqualification. (ECF No. 107-1 at 19.) Plaintiffs argue Judge Arpert correctly disqualified Fish under *City of Atl. City v. Trupos*, 992 A.2d 762 (N.J. 2010). (ECF No. 109 at 19.)

A motion for disqualification calls for the Court to "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Dewey v. R.J. Reynolds Tobacco Co.*, 536 A.2d 243, 251 (N.J. 1988) (citation omitted). However, "a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Id.* The burden of production is borne by the party seeking disqualification. *Trupos*,

7

992 A.2d at 771. If the burden is met, the burden shifts to the attorney sought to be disqualified to demonstrate the matter in which they represented the former client is not the "same or substantially related" to the matter in which the disqualification motion is brought. *Id.* Therefore, the burden of persuasion on all elements under *RPC* 1.9(a) remains with the moving party, it "bears the burden of proving that disqualification is justified." *Id.* (citation omitted). Lastly, "a determination of whether counsel should be disqualified is, an issue of law, subject to de novo plenary appellate review." *Id.*

The Rule of Professional Conduct 1.9(a) states, "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." There are "three necessary predicates to the application of R.P.C. 1.9(a)'s disqualification bar." *Trupos*, 992 A.2d at 772. First, the law firm must have "formerly represented" the plaintiff asserting disqualification. *Id.* Second, the subsequent matter must be "materially adverse" to the interests of the former client. *Id.* Third, the two matters must be "the same or substantially related." *Id.*

As to the first element, Fish's argument that this Court should only evaluate whether ISE and FTEN are former clients of Fish is erroneous. Although neither ISE nor FTEN were ever clients of Fish, Nasdaq was indisputably a "former client" of Fish and is an adverse party to IMAX in this action. In fact, Fish is representing IMAX against Nasdaq in Counts VIII through X, alleging that MIAX misappropriated certain of Nasdaq's trade secrets. Therefore, the former client element is met. The fact that neither ISE nor FTEN were ever clients of Fish is not an issue germane to disqualification.

As to the second element, Fish does not contest the "materially adverse" finding. It does not discuss this requirement in its brief. Nevertheless, this matter is clearly "materially adverse" to the interests of the Nasdaq. Fish prosecuted four of the seven patents that are asserted in this action, the remaining three patents involve the same field of technology for which Fish allegedly provided intellectual property counseling to and prosecuted patents for Nasdaq, and the trade secret claims involve the same technological field and may implicate confidential information that Nasdaq provided to Fish during its prior relationship. (ECF No. 105 at 3.)

As to the third element, Fish claims the matters are not "substantially related." Specifically, it contends that just because it represented Nasdaq years ago and the matters share similar subject matter, is not enough to call the matters "substantially related." (ECF No. 107-1 at 26.) Pursuant to *RPC* 1.9,

> matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

*Trupos*, 992 A.2d at 764. The Court finds Fish received confidential information from Nasdaq that can be used against Nasdaq in this matter and facts relevant to Fish's representation of Nasdaq are relevant and material to this matter.

Through a decade long relationship with Nasdaq, Fish possessed information relating generally to Nasdaq's patent prosecution strategy and approach to defending the validity of its patents, and knowledge of what Nasdaq protected as trade secrets apart from its patented inventions in the electronic trading technology field. (ECF No. 109 at 23.) Fish's prior intellectual property counseling and prosecution work for Nasdaq unquestionably allowed Fish to gain access to confidential information that can be used to Nasdaq's detriment in this case. In fact, "[t]he seven

9

asserted patents and the alleged trade secrets involve the same general field of technology, and the accused instrumentalities are the same for all the patent infringement claims." (ECF No. 105 at 7.) Moreover, Fish unquestionably possesses direct knowledge of four of the seven patents in this matter and has chosen to jointly participate in this matter with Reed Smith by filing a single motion to dismiss. *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*, 144 F.R.D. 235, 239 (D.N.J. 1992) ("Recognizing that plaintiff's attorney's longstanding relationship with Commercial Union would necessarily have mad him privy to confidential and proprietary information of Commercial Union, including its claims and litigation philosophy, its methods and procedures for defending claims and litigation, and its information regarding the administration of various business operations, the court held that plaintiff's attorney could use such information to the substantial disadvantage of his former client Commercial Union."); *Essex Chem. Corp.. Co.*, 993 F. Supp. at 246 (finding that, where the matters are substantially related, "the court will presume that the attorney has acquired confidential information from the former client"). Furthermore, the Fish attorneys involved in Nasdaq's past representation are still members of Fish in the Boston office.

Although approximately seven years have passed since Fish's representation of Nasdaq, the passage of time does not dilute the significance of the confidences provided and the overwhelming substantial relationship between the issues here and the past relationship. Accordingly, the matters are substantially related, and Fish's Appeal is **DENIED**.

### C. *RPC* 1.10

Fish argues in the alternative that even if there was a conflict, disqualification is inappropriate. (ECF No. 107-1 at 31.) Plaintiffs argues disqualification was appropriate because "whatever alleged prejudice that befalls MIAX is mitigated by the fact that 'MIAX has been

represented by two sets of attorneys form the outset of this litigation,' and 'Reed Smith's representation of MIAX can continue uninterrupted." (ECF No. 109 at 32.)

While disqualification typically is the "result of finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). In fact, "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (citation omitted). A court "should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Id.* In doing so, "[i]t should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* The question of whether disqualification is appropriate is essentially a balancing test, with the "client's right to freely choose his counsel" on one side of the scale, and "the need to maintain the highest standards of the legal profession" on the other. *Strategic Envtl. Partners, LLC v. Bucco*, No. 13-5032 CCC, 2014 WL 6065816, at *2 (D.N.J. Nov. 12, 2014).

In *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 459 (D.N.J. 2010), the court provided several factors this Court should consider in determining whether disqualification is warranted: (1) prejudice to the former client; (2) prejudice to the new client; (3) whether the law firms representation of the former client in the former matter has allowed the new client to gain access to any confidential information relevant to this case; (4) "the cost—in terms of both time and money—"for the new client to retain new counsel; (5) "the complexity of the issues in the case

and the time it would take new counsel to acquaint themselves with the facts and issues"; (6) "which party, if either, was responsible for creating the conflict."

Weighing these factors, the Court finds disqualification was appropriate. "Indeed, finding otherwise would allow the same law firm that argued for the patentability of Nasdaq's inventions to represent parties adverse to Nasdaq in this suit who are arguing those very same patens are invalid." (ECF No. 105 at 9.) On balance, Nasdaq would suffer more prejudice and hardship if Fish's representation of MIAX was allowed, being that Fish has access to confidential information and is familiar with Nasdaq's strategic approaches to managing its technology and inventions. By contrast, prejudice to MIAX would be minimal because: (1) this case is still at the pleading stage, (2) MIAX has also voluntarily hired Reed Smith to represent it in this matter on several issue and Reed Smith is already familiar with this case; and (3) Fish is responsible for creating its own conflict in this case by choosing to represent MIAX in a litigation where it previously prosecuted the same patents for Nasdaq. Accordingly, disqualification was proper.

**IV. CONCLUSION**

For the reasons set forth above, Fish's Appeal (ECF No. 107) is **DENIED** and Judge Arpert's September 6, 2018 Memorandum and Order (ECF No. 105) is **AFFIRMED**.


Date: November 26, 2018                  */s/ Brian R. Martinotti*
                                         **HON. BRIAN R. MARTINOTTI**
                                         **UNITED STATES DISTRICT JUDGE**