**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NASDAQ, INC.,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **MIAMI INTERNATIONAL HOLDINGS, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 17-06664 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion Objecting to Special Master Mark Falk's June 5, 2025 Order, filed by Plaintiffs Nasdaq, Inc., Nasdaq ISE, LLC, and FTEN, Inc. (collectively, "Plaintiffs" or "Nasdaq") on June 26, 2025. (ECF No. 424.) Plaintiffs filed a memorandum of law in support of their motion. ("Moving Br.," ECF No. 424-1.) Defendants Miami International Holdings, Inc., Miami International Securities Exchange, LLC, Miami International Technologies, LLC, and MIAX Pearl, LLC (collectively, "Defendants" or "MIAX") filed an Opposition on July 17, 2025 (ECF No. 433), to which Plaintiffs replied (ECF No. 435).

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Plaintiffs' Motion and thereby **AFFIRM** the Special Master's June 5, 2025 Order.

1

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. The DCO

As a part of the ongoing litigation in this matter, the parties entered into a Discovery Confidentiality Order ("DCO") on September 15, 2022. ("DCO," ECF No. 223.) The DCO established three types of confidential information: (1) confidential material; (2) attorneys' eyes only material; and (3) highly confidential source code. (DCO ¶¶ 1–3.) Confidential material includes:

> [A]ny information, document, or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information; or (b) that contains private or confidential personal information; or (c) that contains information received in confidence from third parties; or (d) which the Party that produced the material (the "Producing Party") otherwise believes in good faith to be entitled to protection under Federal Rule of Civil Procedure 26(c)(l)(G) and Local Civil Rule 5.3.

(*Id.* ¶ 1.) Relevant to this appeal, the DCO also governs who may access the confidential material. Under Paragraph 6 of the DCO, confidential material may be disclosed to outside counsel, experts or consultants, and designated in-house counsel and employees. (DCO ¶ 6.) As to that last category of individuals, each party may designate up to three in-house counsel and up to two additional employees. (*Id.* ¶ 6(c).) Either party may object, "pursuant to, and in the manner prescribed in Paragraph 8," to the other party's designated employees. (*Id.*) Pursuant to Paragraph 8, "[a]ny objection shall be made in good faith, stating with particularity the reasons for the objection . . . [and] [t]he objecting party shall have the burden of persuasion before the Court." (*Id.* ¶ 8(b).)

Plaintiffs designated Joseph Felder, Nasdaq's Vice President of Engineering, as an employee to receive confidential material. (ECF No. 441.) Defendants timely objected and

2

requested an order from the Special Master prohibiting Mr. Felder from accessing any documents designated by MIAX as confidential material. (*Id.*)

### B. The Special Master Order

On June 5, 2025, the Special Master entered an opinion and order preventing Mr. Felder from accessing MIAX's confidential material (the "Order"). (ECF No. 418 at 9.) In rendering this decision, the Special Master first noted that the parties agreed Mr. Felder occupies a senior technical position at Nasdaq. (*Id.* at 4–5.) Relying on *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980), the Special Master then observed that, as a practical matter, any information learned by Mr. Felder cannot be "un-learned" or otherwise sequestered. (*Id.* at 5.) The Special Master then reasoned that because of Mr. Felder's "high-level technical role," he would be among the individuals "that may be properly limited from viewing such sensitive material." (*Id.* at 7.)

The Special Master then rejected Nasdaq's argument that it needed at least one technical employee to be able to access some information related to the case, particularly as it starts to prepare for trial. (*Id.* at 8.) According to the Special Master, Nasdaq retained five technical experts who could access MIAX confidential material, so there was a minimal risk that precluding Mr. Felder's review of such information would impair Nasdaq's ability to prosecute its case. (*Id.*) The Special Master also assumed that there were other Nasdaq employees who could perform the technical analysis necessary to prosecute or resolve this matter. (*Id.*) The Special Master also rejected Nasdaq's fairness argument, whereby Nasdaq asserted that because it has allowed MIAX technical employees to view its confidential material, Nasdaq should be able to designate Mr. Felder to receive technical information. (*Id.* at 8–9.) According to the Special Master, Nasdaq could have objected to MIAX's designations or requests for access to confidential material by

technical employees, and its failure to do so cannot form the basis for allowing its own technical employee to have access to MIAX confidential material. (*Id.* at 9.)

Following the Special Master's Order, Nasdaq filed a motion to have this Court revise the Order and allow Mr. Felder to serve as one of Nasdaq's designated employees. That motion is now fully briefed.

## II. SUBJECT MATTER JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the federal claims alleged in the Complaint, and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

## III. LEGAL STANDARD

On review of a Special Master's Order, the Court "may adopt or affirm, modify, wholly or partly reject or reverse" the Special Master's Order, or "resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). The order appointing the Special Master in this matter states that "[o]bjections to factual findings and legal conclusions of the Special Master shall be decided *de novo* by the District Court Judge assigned to this action." (ECF No. 284 ¶6.) Generally, *de novo* review requires "an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *Krishanthi v. Rajaratnam*, Civ. No. 09-5395, 2023 WL 5605565, at *5 (D.N.J. Aug. 30, 2023) (internal quotation marks omitted).

## IV. DISCUSSION

As an initial matter, the Court notes that the DCO is silent on the showing that must be met to prevent a designated party from reviewing confidential material. Plaintiffs urge this Court to adopt the "good cause" standard that courts use to determine whether a protective order should be entered. (Moving Br. at 10–11.) In contrast, Defendants claim that there only needs to be a "good

4

faith" basis for an objection. (Opp. at 9. n.1.) Resolving this dispute is not necessary, however, because the Court finds that Defendants have met their burden even under the higher "good cause" standard used in cases involving the issuance of a protective order.

In these cases, a "party seeking a protective order must show good cause by demonstrating a particular need for the protection of the confidential material." *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [good-cause] test." *Occidental Chem. Corp. v. 21st Century Fox America, Inc.*, Civ. No. 18-11273, 2022 WL 2533011, at *3 (D.N.J. July 7, 2022). In cases involving technical and scientific information, courts generally afford such information greater protection. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (precluding the plaintiff's CEO from accessing the defendant's confidential materials because he was unlikely to segregate that information from his own future research for the plaintiff).

According to Plaintiffs, Defendants "cannot establish any particular need to prevent" Mr. Felder from accessing the confidential material or that his access to such material would pose a "competitive harm" to MIAX. (Moving Br. at 12.) The Court disagrees. As the Special Master previously recognized, Mr. Felder occupies a high-level technical role within Nasdaq, namely, the "chief architect" responsible for the design, development, and maintenance of all Nasdaq options trading systems. (Felder Dep. Tr. (DX 5) at 96:8–13.)[1] As a part of that role, Mr. Felder "review[s] other people's designs, weigh[s] in on them, and help[s] them to make progress on them." (*Id.* at

---

[1] References to "DX" refer to the Exhibits filed by Defendants in Opposition to Nasdaq's Motion Objecting to the Special Master's June 5, 2025 Order. (ECF No. 434.)

5

96:20–22.) And, contrary to Plaintiffs' assertion, the information at issue could cause "competitive harm" to Defendants if Mr. Felder were permitted to review it.  As defined by the DCO, confidential material encompasses "trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information." (DCO ¶ 1.)  Indeed, some of the documents produced as confidential material include the architecture and design of the MIAX trading technology, the architectural designs of MIAX's back-office technology, diagrams of the internal components and architecture of the matching engine of the MIAX trading systems, and configuration files, which contain settings and parameters for software applications used by the MIAX trading platform. (Schafer Decl. (DX 3) ¶ 12.) The disclosure of this technical information to Mr. Felder, given his role at Nasdaq, would undoubtedly cause competitive harm to Defendants.[2] *See Safe Flight Instrument Corp.*, 682 F. Supp. at 22; *Boehringer Ingelheim Pharm., Inc. v. Hercon Labs. Corp.*, Civ. No. 89-484, 1990 WL 160666, at *3 (D. Del. Oct. 12, 1990) (preventing in-house technical personal from reviewing technical information because the "threat of economic injury" would be increased).

Plaintiffs also assert that Mr. Felder's designation is expressly permitted by the DCO, which permits each party's right to designate two employees as recipients of confidential material so long as they have signed the confidentiality agreement. (*Id.* at 13.)  While that is undoubtedly true, the DCO also allows either party to object to the other side's designated employee.  Clearly the DCO contemplated at least some scenarios in which a designated employee should be unable to access the confidential material.  Plaintiffs' right to designate two employees as recipients of Confidential information is therefore not without limits.  If the parties had intended otherwise,

---

[2] Like the Special Master, this Court has no reason to doubt the integrity or character of Mr. Felder. Nonetheless, this Court recognizes that "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).

there would be no need for the objection provision in the DCO. And as explained, because Defendants have made the required showing, Mr. Felder will be prohibited from accessing Defendants' confidential material.

Plaintiffs claim that "[t]he Special Master's suggestion that Nasdaq somehow waived its right to mutuality is groundless given the existence of the DCO." (*Id.*) This argument, however, completely ignores the fact that Plaintiffs could have objected to any of Defendants' designated employees. As the Special Master correctly noted, "Nasdaq did not do so and must not now criticize MIAX for exercising rights specifically granted to it under the DCO." (Order at 9.)

Plaintiffs also argue that it would be inequitable to prevent Mr. Felder from reviewing confidential material when MIAX employees have already been provided with same. (Moving Br. at 16.) This Court, however, is not preventing Plaintiffs from identifying employees from having similar access to confidential material. Of course, the DCO expressly permits Plaintiffs to designate up to two employees for such review. It just cannot be Mr. Felder. To the extent Defendants also contend that there is "good cause" or a "good faith" basis to bar *all* of Plaintiffs' experienced technical employees from reviewing confidential material, the Court finds that position untenable. Under the DCO, Plaintiffs are still entitled to designate two employees for this purpose, and the Court directs the parties to meet and confer to identify those individuals.

## V.     CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiffs' Motion and **AFFIRM** the Special Master's Order.  An appropriate Order will follow.


Date: January 27, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
